Okay, the next item is Christianson v. Christianson. We'll give counsel a moment to set up. And when you're ready, appellant, you want to come forward and state your name for the record. Thank you. Good afternoon. I'm Heather Dabler. I'm here on behalf of the appellant, Dean Christianson. May it please the Court, Justice McKinney, Justice Scholar, Justice Bollinger, and Mr. Courtney. This is a case that's an appeal of a December 2024 judgment of dissolution from the Honorable Tamika Purchase in St. Clair County. I believe that the issues are not complex in this case, and therefore I think our briefing represents the issues aren't too complex. The background facts are that both parties were licensed practicing attorneys in the state of Illinois and Missouri when they were married in 1985. In 1990, they had their first child. In 1992, they had triplets. We agree that Tracy primarily stayed at home and raised the children, and Dean primarily worked at his law firm, eventually rising to the level of partner. During the marriage, Dean was able to become partner, but Tracy also worked various jobs part-time. At the time that she was pregnant with the first child, she was working at Memorial Hospital, in-house counsel for Memorial Hospital. Thereafter, she worked a variety of jobs, which included working for her husband part-time, working for a friend in private practice as an adjunct faculty at SWCC for about three years, and as in-house counsel for EDCO Corporation until around the time their oldest grandson, Aiden, was born in 2011. There was extensive testimony that the parties took on the role of caregivers for their grandchildren because their daughter was having some substance abuse issues. At that time, though, both parties were still working, and both parties were actively involved in raising their grandchildren. When Tracy filed for divorce in 2023, she still had a license to practice law in the state of Illinois and Missouri. She let that lapse in 2024. She did stop working sometime around the COVID timeframe and did apply for one job as a paralegal in Missouri around the time that she filed for divorce. Tracy also, in June of 2021, which was around the time she stopped working, inherited about $424,000 from her mother, which included a Charles Schwab account of $42,000, and then a second Charles Schwab account of $240,000, and then approximately $74,000. And I'm going to interrupt you. The dividends from that account were included in the maintenance calculation, correct? Yes, Your Honor. So even though they were awarded to her as her non-marital property. So it was really the income and the imputed income and such that was being considered in terms of the maintenance calculation, right? Correct, Your Honor. And if I'm – I've had a lot of cases today, sorry. So they looked at his income, obviously. She didn't have income at that time. Was there any income imputed to her at all? There was no income imputed to her, Your Honor. And I'll go ahead and just skip to that. With regards to the imputation of income, that is what the second issue was in my brief. We are arguing that kind of issue two and issue three go together. With regards to the imputation of income, the court should have either looked at her non-marital assets of about $424,000 and perhaps deviating from the guidelines if they declined to impute income because they are both of over-retirement age. They are both over the age of 65. This court previously in a case – If he's still working, he can move to modify, right? I mean, at any time upon retirement. Why would you deviate at this point? A couple of reasons, Your Honor, because she voluntarily let her law license go. She made no active – she actively did not seek any employment. She moved down to Kennesaw, Georgia, where she was supporting her son and her son's roommate, who were adults, functioning adults, at the rate of $6,000 a month. So she was spending $6,000 a month out of her inheritance to support two adults, and no income was imputed to her whatsoever, while Mr. Christensen at 67 was still working full-time as a partner at his law practice. We do believe that the case law supports a couple of things. And one of the biggest issues that I cited in my brief was that she could have applied for Social Security. She could have received that Social Security amount. That's one of the examples that I put in my brief as perhaps what the court could consider as what the maintenance should be. And to that end, the appellate – I believe the trial court raised that as an issue I know opposing counsel did, that if it were to impute income based on your client or the other – the spouse applying for Social Security benefits, I mean, wouldn't that go the other way as well? I mean, wouldn't that income likewise be imputed to the other party in this case? Well, so, Your Honor, in – under – so maintenance is determined under 750-ILCS-504. And it's gross income and net income under 504 cites to 505, which is the child support section. The child support section says that when imputing income or potential income, the court is to look at – and this is in Section 505 – determining the employment potential, probable earnings level in the community, based upon the obligor's work history, occupational qualifications, prevailing job opportunities, ownership of non-income-producing assets, or the earnings level in this community. So the court could look at imputing income. And I want to clarify, too, the statute has since been amended since this case was decided, so the current statute is not applicable with regards to imputation of income. One of the cases that we cited was the Schuster case with regards to – he decided not to become employed as a lawyer. He said he didn't like it, stressed him out. So the court awarded a 55% share of the marital estate to him instead of awarding maintenance. What our contention is here, Mr. Christensen is paying – Ms. Christensen is getting 40% of the total amount of assets. But while – and Mr. Christensen is paying 60% of their $238,000 student loan debt for their three children, while Ms. Christensen still has this over $400,000 non-marital asset when they're both of retirement age. This court has previously found that 65 is a reasonable retirement age in Ray Marriage of Parker. So while I agree, Your Honor, at Justice Shuler that he is still working, this is a maintenance case. He should be paying maintenance. This is a permanent maintenance case. We are just arguing that the amount was excessive and that the court should have considered her earning potential, her non-marital assets when determining that amount. We're going to tell you about the $33,000, if you would, for the law. Because it looks to me like in the court order that the court found that his percentage was worth $33,000 but then awarded essentially all of that. I honestly think it's a mathematical error, Your Honor. I practice family law. This happens a lot of times when I'm doing negotiations. The court did, on page 2 of her judgment, C-122 of the record clearly states, I find for purposes of the division of marital assets, the court assigned the value of $33,000 to the account, and the account was awarded to Dean free and clear of any interest by Tracy. If the court then were to go to C-123, page 3 of the judgment, the court specifically says that the proceeds from the sale of the marital residence should be divided 50-50. The court in its judgment also divided the retirement accounts 50-50. However, while they did get offsets, which we are not disputing, credit for expenses paid to sell the residence, those were appropriate. What the court, I believe, should have done was either A, say Tracy gets the first $33,000 of the proceeds, which would then have effectively given her the same asset that Dean had, and then divided the rest. She said 50% to Dean, 50% to Tracy, but Dean pays her $33,000 out of his share. My question is, and I didn't see this in the record, so I don't know if I missed it. Was there a motion to reconsider? Was there a motion to clarify? There was not a motion to reconsider, and there was not a motion to clarify. Okay. So the court didn't have, no one had an opportunity to say, Judge, was this a typo? Did you mistakenly apportion this?  And part of that was timing. Part of that is how long it unfortunately takes cases to get through, and they wanted responses. So no, there was not, we did not have a motion to reconsider. And then the last issue is with regards to the division of the debt for the student loans for the three boys that were children of the parties. Well, had Tracy not had these non-marital assets of over $400,000, I would agree with the court that they should have divided those debts 60-40, because that would have been in the percentage of their income. But I don't think that the court can completely ignore this $400,000 of non-marital assets in both determining the amount of maintenance and determining the division of debt. In 503, which instructs the court how they are to divide property in a divorce, property and debts are considered the same. The court is required to consider any non-marital assets of the parties, the earning potential of the parties, and all of those things. So if the court were to modify the maintenance or deviate down below the guidelines or impute income with regards to maintenance, then the division of the debt with regards to the student loans should probably be affirmed. But if the court affirms the amount of maintenance, then we're asking the court to reconsider the amount that was ordered to be paid on the debt and divide that debt 50-50. Because right now the parties aren't equal. This is a very long-term marriage, 1985 to 2024. And they're both over 65 at this point. They both, I'm sure, want to retire, but it would be unfair and inequitable to put the onus or the burden on Mr. Christensen with regards to that debt when she does have the ability to contribute more. I understand Mr. Courtney's argument in his reply brief with regards to, well, you know, even if the court made a mathematical error with regards to that $33,000, it's just de minimis when you consider the value of the estate. These people did not have a great standard of living. If you look at the award of vehicles, the total value of vehicles that was assigned to them was $3,500. Even though they had a 66 and 67, they had $175,000 worth of equity in their house. They did not have this large estate. Now, one other thing I wanted to mention briefly with regards to Ms. Christensen's ability to work, there was some testimony in the record that she suffered from depression or anxiety or had these health issues, but there was no medical testimony. There was no medical reports. There were no psychiatric reports. What was in the record was that she had gone on a two-week backpacking trip in April of 2023 and that she was... But, counsel, he stipulated, right, that she had health issues and she was caring for all these children first and then grandkids, and there was some, I think, depression. I don't want to... On both ends, and Mr. Christensen testified at length as to his medication had been increased for depression and anxiety, but that he didn't really have a choice because they were providing private school tuition for all three of their grandkids. I think the testimony was extensive that both of them took a very active role in raising these children. It was just he's a partner at a law firm, and given the circumstances... And, again, Your Honor, that's why... Maintenance should have been awarded. Any further questions? Any questions? All right. All right.  I'll turn it over. All right. Mr. Courtney. May it please the Court, counsel? My name is Charles Courtney. I represent Tracy Christensen. Your Honor, to address the question you raised about Social Security benefits, we argued that to the trial court, and, frankly, that calculation is in our closing argument to the court. The maintenance obligation actually would go up if you imputed Social Security benefits to these parties. Both of them testified why they're not taking their Social Security benefits. We've cited a case law to you, and I'm not going to run through that. But, basically, they're both making the exact same decision. They both want to wait because the value in waiting increases that award for both of them. If it's reasonable for him to do that, it's certainly reasonable for her to do that. I think the court did consider that. And, again, his maintenance goes up if you make that calculation. The comment, and I agree with Ms. Dabler, these weren't normal grandparents. I'm a grandparent. I don't send my grandchildren to private school. My grandchildren don't live in my house. I don't take my grandchildren to school every day, to all of their extracurricular activities, basically from birth through the trial. That's how these folks lived. My client has an older son, and it's in the record that he had mental health issues. She moved to Georgia, and she was using part of her non-marital property to support him. That's true. By the same token, Dean was using their marital property every month to support the three grandchildren and their daughter. The support of the grandchildren was by agreement of the parties. If you look at the record, the support of the daughter was not with agreement of the parties. So that factor, the seven children, as Dean testified, we raised seven children, our four and the three grandchildren. That puts this case in kind of a unique situation. It isn't like Schuster where the gentleman practiced law for a few years, didn't like it, and decided to go work in a coffee shop. That's not what went on here. This woman has not worked full-time in the field since 1991, 33 years prior to the trial in this case. That was by agreement. There was significant testimony in this record that even when the triplets, their triplets hit junior high, Dean didn't want her to work full-time, and she didn't. And I'm not blaming him for that decision. I don't think they regret that decision, but we can't go back and change time. That's what they did, and as Dean testified, that has a huge impact on her employability. She couldn't gain a reputation with clients. She couldn't gain a business reputation like he did. Dean is a very good lawyer. He's very good at what he did. She did not have that opportunity. Frankly, that's what the maintenance statute is for. It's for cases like this. She was 65 at the time of trial. I agree again with Ms. Daigler. The Parker case does say that's an appropriate time to retire. Dean could retire tomorrow, and you are correct. Maintenance is subject to modification at that point. So I think that what the court did with the imputation of income was correct. The court applied. Let me piggyback on that. Sure. Ms. Daigler said, you know, some of these things kind of are hand-in-glove. So if the court were to reverse one or deal with one, that the other would be modified. Do you think the trial court took into consideration the proportion of student loan debt based on the maintenance and the length of maintenance? I mean, Mr. Dean is or I'm sorry, Mr. Christensen is not going to have a lengthy work history would be my guess. I mean, hopefully he does. But, you know, let's be honest. I mean, at some point he gets to retire, right? Absolutely. And he could retire tomorrow, and you are correct. The judge in that determination, that 60-40 split instead of a 50-50 split, is about $23,000. That's all it is. It's $230,000 out of a seat at counsel. I thought it was a little narrow. She says it's $230,000 in debt. Ten percent of that is $23,000. And I'll piggyback back at you with this $33,000 count. There was no post-trial motion. It wasn't a typographical error, probably. But I've got the record that I have in front of me to defend that if that's an error, if she meant to say half, that's $16,000. We're now at $39,000 away from a 50-50 split in this case. It's not very significant on the value of the estate. I'm jumping around here. Sure. The 33 that likely could have been a typo, right? Right. So what impact does not having a motion to reconsider or a motion to clarify have on this court? I mean, it's still fair game, right? I mean, we're just looking at the record that we have. How are we supposed to judge that? I think that's exactly the point. There are times that I think we all as attorneys don't file post-trial motions on purpose because we think we've got a record that I don't want anybody to try to fix because I'm probably going to be okay on appeal. I can't answer in this case because it wasn't an issue that affected me. So I do think you're left with the record you have. You're also left with the record to this extent. The value of that account at the time of trial was $600,000. His interest in it is 11.5375%. His interest was $69,000 at the date of trial. She found it to be $33,000, but the testimony is in the record from Dean's testimony as to what the actual value was at the time. I would tend to agree I think it was a typo, but I will also cite to you that that Berderec case that I cited says that the court has to value all of the assets at the time closest to the judgment of dissolution of marriage. So to say that the minimum we wanted in the account, which I think is what his testimony was, was $300,000, roughly 11% of that is $33,000, I know where that came from. But the actual value of that account at the time of the hearing was $600,000. So, again, yes, I think you're stuck with the record we have in front of us. A motion to reconsider may have been helpful in that regard on that issue. The imputation of income, again, you have to consider mental health, physical health, her age, her circumstances, her ability to work, and her work history. There was a suggestion at one point that the court could impute $60,000 a year to her because that's what a paralegal might make. There's no testimony in the record to support that. There's none. The backpack hiking tour that she and Dean went on, Dean testified about that. He had to carry the load because she has steel rods and bars in her back. She has a serious, significant injury. There was really no dispute that all of her physical and emotional conditions impacted her ability to work. I think the court considered properly all of those limitations in refusing to impute income. And we see this all the time with folks that are unemployed, and it's normally women. We see this all the time. And if I'm looking at a 33-year-old lawyer who says, I don't want to be a lawyer anymore, it's a completely different case. I've got a 65-year-old in poor health who hasn't worked full-time in 33 years by agreement of the parties. I think the court appropriately entered its maintenance warrant. Any questions? All right, thank you very much. Rebuttal. Yes. Briefly, Your Honors, thank you. The typo. The typo. I don't believe that we're required to file a motion to reconsider, Your Honor. And I think that we can stand our record and we filed the notice of appeal because we do believe that there were multiple errors in the record. And I think that the court can consider it. I don't think there's any requirement in the statute that we file a motion to reconsider. With regards to Mr. Courtney saying the maintenance will go up if you were to impute Social Security to the parties, the court cannot impute income to a party when they are gainfully employed. The statute specifically says you can only impute income to a party when they are underemployed or unemployed. Both parties testified that Mr. Christensen was doing the maximum amount he could have done to maximize his income. With regards to Mr. Courtney's statement about the capital account was worth $600,000 at the time of trial, it was. The testimony and the record is also very clear that anything over $300,000 was divided amongst the partners. The court found. I mean, the court order specifically says that. Yes. And so just to clarify any confusion on that, that those distributions and draws to the partners of that remaining $300,000 were already included in Mr. Christensen's income. Mr. Christensen is paying maintenance based on the total amount of his income. He had requested that if the court ordered maintenance that they pay it on his base salary and that he pay her a percentage on a quarterly basis. The court declined to follow that. So I don't think that that's a relevant consideration for the court. Your Honor made an excellent, Justice Schor made an excellent point that I did not think of and wish I would have with regards to the 60-40 division of the debt. That's not modifiable. That's a property order. That's a division of property. So if Mr. Christensen next year at 68, 69, 70, and three years decides to retire, they're still going to have $180,000, $175,000 of debt when he's going to be paying 60% of that and she still has that large non-marital asset. So because that also can't be modified and we have two people of retirement age, we're asking the court again to consider one or the other, either two. And again, I know Mr. Kortnian indicated, you know, this 16-5 isn't really that much, 23,000. When you have a 68-year-old who's renting a house, that is a lot of money to him when he can put it on payment or buy something. So we would ask the court specifically on those issues to overturn the trial court. Okay, thank you.  We'll take matters under advisement and we will issue a ruling in due course. Thank you both.